# OTTINGER
## EMPLOYMENT LAWYERS

Robert W. Ottinger
Direct: (917) 566-2037
robert@ottingerlaw.com

79 Madison Avenue
New York, NY 10016
(347) 492-1904

535 Mission Street
14th Floor
San Francisco, CA 94105
(415) 262-0096
OTTINGERLAW.COM

October 13, 2023

**VIA ECF**
Hon. Philip M. Halpern
U.S. District Judge
United States District Court
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and U.S. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

> **Re:  Russian School of Mathematics, Inc. v. Irene Sinyavin, et al.**
> **Case No.: 7:23-cv-8103-(PMH)**

Dear Judge Halpern:

Defendants, in the above-referenced matter, respectfully request a pre-motion conference pursuant to the Court's Individual Practices, Rule 2(C) and Rule 4(F). This correspondence sets forth the basis for the anticipated motion seeking a Preliminary Injunction to prevent Russian School of Mathematics, Inc. ("RSM") from enforcing the restrictive covenants (the "Restrictive Covenants") set forth in the March 12, 2021, Employment Agreement (the "Agreement"), pending the conclusion of this litigation. Defendants met and conferred with Plaintiff prior to requesting a pre-motion conference.

## I.   Introduction

Plaintiff, RSM, hired Defendant Irene Sinyavin (Ms. Sinyavin) on March 12, 2021, to open their first branch in Westchester County.  Due to Ms. Sinyavin's excellent reputation in the community and extensive contacts with students, parents, and teachers, she was able to go from zero to 450 students in less than two years.   Ms. Sinyavin was well known in the area as an excellent mathematics teacher as she taught at a local high school and her own children enjoyed tremendous success getting into elite Universities such as Yale and Stanford and one is a National

Champion in Rubiks Cube, ranked number three in the word.

On January 11, 2023, without any prior notice or indication of performance problems, RSM terminated Ms. Sinyavin without any explanation.   Ms. Sinyavin promptly opened her own school called Logicus, LLC focusing on small group lessons and children with special needs using an entirely different approach than that used by RSM.   Due to Ms. Sinyavin's well-known reputation, her school was immediately flooded with applicants and interest and currently has 78 students enrolled who rely on the school for help with mathematics.   She now moves for a Temporary Restraining Order because the Restrictive Covent is not enforceable and its enforcement would cause tremendous harm to Defendants and the many students currently enrolled at Logicus.

## II.    Preliminary Injunction Standard

The movant must show: 1) likelihood of success on the merits; 2) irreparable harm; 3) the balance of equities tips in her favor, and 4) injunction is in the public interest. In this case, each factor weighs in favor of granting a preliminary injunction in Sinyavin's favor because she satisfies all requirements.

### A.  Sinyavin Is Likely to Succeed on the Merits.

Ms. Sinyavin has a likelihood of success on the merits because the Restrictive Covenants are unenforceable for at least two independently sufficient reasons. First, New York law does not permit an employer to enforce Restrictive Covenants against a former employee who, like Ms. Sinyavin, has been terminated without cause. Second, RSM lacks a legitimate business interest to justify enforcement of the covenants. Third, the Restrictive Covenants impose undue hardship and are injurious to the public.

### 1.  Sinyavin Was Involuntarily Terminated Without Cause.

Ms. Sinyavin is likely to succeed on the merits of her claim because New York courts will not enforce a non-compete and/or non-solicitation provision against a former employee that was

terminated without cause. *Arakelian v. Omnicare, Inc.*, 735 F.Supp.2d 22, 41 (S.D.N.Y. 2010) (enforcing a noncompetition provision when the employee has been discharged without cause "would be 'unconscionable' because it would destroy the mutuality of obligation on which a covenant not to compete is based.") SIFCO Industries, Inc. v. Advanced Plating Technologies, Inc., 867 F.Supp 155, 159 (S.D.N.Y. 1994); Post v. Merrill Lynch, Pierce, Fenner & Smith, 421 N.Y.S.2d 847 (1979). A covenant against competition is dependent upon a mutual obligation, which ceases to exist when an employee is terminated without cause. Grassi & Co., CPAs, P.C. v Janover Rubinroit, LLC, 918 N.Y.S.2d 503 (2d Dep't 2011). Freedom Mortg. Corp. v. Tschernia, No. 20-CV-1206 (AJN), 2021 WL 1163807, at *4 (S.D.N.Y. Mar. 26, 2021).

Ms. Sinyavin's tenure at RSM cannot credibly be called anything but an unprecedented smashing success. She went from no students to nearly 500 in under two years. In fact, RSM seeks to enforce the non-compete for the opposite reason. They perceive her as a potential threat BECAUSE she is so skilled and well regarded in her field. Because Ms. Sinyavin was fired without cause, she has established a likelihood of success on the merits.

### 2.  RSM Cannot Satisfy the Legitimate Business Interests Test.

Nearly half a century ago, the New York Court of Appeals set the framework to evaluate non-compete agreements such as the one here in Reed Roberts Associates v. Strauman, 40 N.Y.2d 303 (N.Y. 1976) p. 306. The court explained that such a covenant will only be enforced to the extent necessary to protect a company's Legitimate Business Interests. The court stated that the test could only be met upon a showing that enforcement was necessary to prevent the disclosure of an employer's trade secrets or confidential customer information. This rule was later confirmed in *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999). Here, it cannot be argued that teaching math involves trade secrets and the list of students is not only not confidential, but many of them already knew Ms. Sinyavin or were familiar with her reputation. Moreover, Ms. Sinyavin

has no interest in, or need to solicit RSM students. She already has a strong flow of students knocking on her door and is more than willing to abide by the non-solicit agreement. To be clear, the non-solicitation of RSM students and employees is not at issue as Ms. Sinyavin has no need to recruit students or teachers from RSM.

### a. RSM's Claim that Defendants Have Used and/or Disclosed its Alleged Confidential Information and Trade Secrets is Completely Without Merit.

RSM has not and cannot proffer any actual evidence to support its accusations. Rather, RSM has cast only theoretical, speculative, and conclusory charges against Defendants about their supposed use and disclosure of RSM's confidential information and trade secrets. For example, RSM makes the conclusory assertion that Sinyavin and Logicus have used to their benefit certain "Confidential Information" including, without limitation, copyrightable works, customer identities, curriculum information about student and prospective students and contact information. However, Sinyavin was never made privy to any formula, pattern, device or compilation of information, which provides RSM with an opportunity to obtain an advantage over its competitors. RSM has no evidence to the contrary. Since Sinyavin does not possess knowledge of RSM trade secrets, RSM cannot show the restrictive covenants are necessary to protect against the misappropriation of trade secrets.

### B. Irreparable Harm Will Result and the Balance of Equities Are in Her Favor.

An invalid non-compete restriction inflicts the kind of harm that cannot be fully compensated by an award of monetary damages, such as causing an employee to miss potential advancement in their chosen career; forcing an employee to move in order to find employment; or forcing an employee to leave a field entirely. Thus, courts have granted injunctive relief where the requesting party has shown enforcement of the covenants will unduly restrict him/her from obtaining employment in the employee's industry. See *Frank v. Westco Distribution, Inc.*, 892

N.Y.S.2d 349 (1st Dep't 2009) (granting preliminary injunction barring enforcement of restrictive covenants in light of plaintiffs' showing that they would be prohibited from working in industry should the non-competition clauses be enforced); *Gramercy Park Animal Center, Inc. v. Novick*, 516 N.Y.S.2d 977 (1977) (covenants against competition should be construed to avoid loss of employment and livelihood).

The Restrictive Covenants unreasonably restrict Sinyavin for the same reason the balance of equities tips decidedly in her favor. Sinyavin spent many years building her reputation as a teacher and tutor in the Scarsdale area. RSM terminated Ms. Sinyavin's employment without cause and now seeks to render her unemployable in her area of expertise in her home region. Moreover, nearly 100 students now rely upon Logicus for tutoring and math instruction, and they will be stopped in mid-semester and harmed if the covenant is enforced. Indeed, the inherent inequity is palpable if an employer is permitted to enforce restrictive covenants against an employee that it terminated without cause.

Respectfully,

Robert Ottinger
The Ottinger Firm, P.C.

cc: Counsel of record (via ECF)